UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CANDLER, | No. 2:14-cv-0363 GEB KJN P |
| Plaintiff, | |
| v. | ORDER |
| MALLOT, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with an action brought pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's motion to compel. (ECF No. 29.) For the following reasons, plaintiff's motion is denied.

Plaintiff's Claims

This action is proceeding on the original complaint as to defendants Torres, Lee, Pavich, Mallot and Kitch, containing the following allegation. On July 26, 2013, plaintiff had suicidal thoughts. He was handcuffed and then taken from his cell and placed in a holding cage. When defendants Pavich and Lee arrived to take plaintiff to see medical staff, defendant Pavich placed the handcuffs on plaintiff's wrists so tightly that they caused pain and cut off circulation. Defendant Pavich also placed leg irons on plaintiff so tightly that they caused pain and cut off circulation. Both defendants refused plaintiff's request to loosen the restraints.

////

1

Plaintiff was then forced to walk approximately 300 feet to a transportation vehicle. When plaintiff arrived at the A Facility Treatment Center, the nurse who saw him refused to loosen the restraints.

After talking to the nurse, plaintiff was taken to the sally port by defendants Pavich and Lee and placed in a holding cage the size of a phone booth. On the way to the holding cage, plaintiff heard defendant Torres say to defendants Pavich and Lee, "You didn't see nothing. You didn't hear nothing."

There were other inmates in nearby holding cages complaining of long waits, cold weather and tight restraints. Plaintiff asked A yard officers defendants Mallot, Torres and Kitch to loosen his restraints. These three defendants refused to help plaintiff.

After two hours, plaintiff needed to use the restroom. Defendants Mallot, Torres and Kitch refused plaintiff's request to use the restroom. Plaintiff's shoulders began to hurt because he was handcuffed behind his back. Plaintiff wore only boxer shorts and a t-shirt.

After five hours, plaintiff was forced to walk back through the Treatment Center with the restraints cutting his skin at his wrists and ankles. Plaintiff was driven to C yard and placed on suicide watch.

When defendants Pavich and Lee removed the restraints, there were cuts, scrapes and bruises on plaintiff's wrists and ankles. When plaintiff asked for medical attention, defendants Pavich and Lee told plaintiff that there was no medical staff on duty.

Background

Plaintiff moves to compel defendants to provide responses to request for production of documents nos. 1 and 3. Request No. 1 seeks "a copy of what the log book reads on B-Yard (B-4) and A-Yard (A yard program office) during the incident at matter." (ECF No. 29 at 8.) Defendants initially responded that the request sought confidential information or information that could compromise the safety of the institution, staff and/or inmates. (Id.) Defendants also objected on grounds that the request was vague and ambiguous as to the phrase "during the incident at matter" and as to the phrase "log books." (Id.) Defendants went on to produce documents identified as "CDCR001" in response. (Id.) Plaintiff did not attach these documents

to the motion to compel.

Request no. 3 asked defendants to produce "the names of the inmates who was in holding cells on 'A' facility with plaintiff during the incident at matter because they are potential witnesses for any claim." (Id.) Defendants objected that the request sought confidential information and was vague and ambiguous. (Id. at 8-9.) Defendants further responded that after a diligent search, they could locate no documents responsive to the request. (Id. at 9.)

In their opposition to plaintiff's motion, defendants state that they have produced all documents they could locate in response to request nos. 1 and 3 after conducting reasonable searches. Defendants have provided the declarations of Correctional Lieutenant Ellin and Litigation Coordinator Young describing the searches for the documents.[1] (ECF Nos. 34-1 and 34-2). These declarations indicate that after diligent searches, the holding cell logs for A facility sally port holding cells for July 26-27, 2013, cannot be located. Litigation Coordinator Young state that to his knowledge, the logs have not been destroyed and he has instructed his staff to keep searching for them. (ECF No. 34-2 at 3.)

However, California State Prison-Sacramento did have a *copy* of the A facility sally port holding cell log for plaintiff dated July 26-27, 2013. (Id.) This document appears in plaintiff's central file and is part of plaintiff's appeal concerning the events of July 26, 2013. (Id.) This is

---

[1] Correctional Lieutenant Ellin states that in late July or early August, searches for the holding cell logs from holding cells for the A facility Sally Port covering July 26-27, 2013, were conducted in the following areas: B-4 facility Sally Port, B-facility watch office, B-facility Sergeant's office, Correctional Lieutenant Ellin's office, A-facility Sally Port, A-facility sergeant's office, A-facility Lieutenant's office, and A-facility security and escort office. (ECF No. 34-1 at 1-2.) Lieutenant Ellin also contacted Lieutenant Engellenner of C facility and directed him to search the C-facility watch office and sally port. (Id. at 2.) None of the searches could locate the holding cell logs for the holding cells for the A facility Sally Port for July 26, -27, 2013. (Id.) Searches of the same areas were again conducted in September 2014. (Id.) Again, the logs could not be located. (Id.)

Litigation Coordinator Young states that she was advised by staff following the searches described by Lieutenant Ellin that the holding cell logs for holding cells for the A yard Sally Port for July 26-27, 2013, including the original log for plaintiff, could not be located. (ECF No. 34-2 at 2.) In September 2014, Litigation Coordinator Young directed staff to conduct additional searches for documents responsive to plaintiff's motion to compel. (Id.) The additional searches yielded the log book for B yard from July 26-27, 2013, and the Suicide Watch Tracking log for the first and second watches for July 27, 2013. (Id. at 2-3.)

3

the document that defendants produced to plaintiff in response to request no. 1.

In the opposition to the motion to compel, defendants state that although the copy of plaintiff's sally port holding cell log contains a cell log for another inmate, this log was not considered responsive to plaintiff's request because the other inmate was not in an A facility sally port holding cell at the same time as plaintiff.

Litigation Coordinator Young also states that staff searches located no logs for the "A Yard Program Office," referred to in request no. 1. (Id.) Litigation Coordinator Young was advised by staff that no such logs are kept or ever existed. (Id.)

In September 2014, Litigation Coordinator Young conducted additional searches for the documents requested, i.e., documents reflecting the names of inmates in the A-yard sally port holding cells at the same time as plaintiff and the logs books for B yard and A yard program office. (Id.) Litigation Coordinator Young found two documents responsive to these requests: pages from the B yard log book and Suicide Watch Tracking Log for first and second watches for July 27, 2013. (Id. at 2-3.) These documents were sent to the Deputy Attorney General with the names of the inmates appearing on them redacted for safety, security and medical privacy reasons. (Id. at 2-3.) On October 2, 2014, defendants provided these redacted documents to plaintiff in a supplemental response.

In their opposition, defendants also clarify that the documents sought in request no. 3, i.e., documents containing the names of inmates that may have been in the other holding cells in the A facility sally port at the same time as plaintiff, would be in the holding cell logs that cannot be located.

In his reply to defendants' opposition, plaintiff states that Operation Procedure No. 6 requires prison officials to retain holding cell logs for one year from the last date entered in the log. Plaintiff alleges that he requested the holding cell logs prior to one year after the last date entered. Plaintiff argues that if the logs are missing, prison officials failed to comply with the regulations.

In his reply, plaintiff also states that he was not asking defendants to produce a suicide tracking log. Instead, plaintiff requested defendants to produce a document similar to one

4

attached to his reply as exhibit A.  This document is an entry from plaintiff's medical records from June 16, 2009, containing entries by medical staff of their observations of plaintiff while on, what appears to be, suicide watch.  (ECF No. 39 at 5.)

Discussion

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ...." Fed.R.Civ.P. 26(b)(1).  Rule 34 empowers a party to serve on any other party a request to produce "any designated documents ... which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a).  Documents are in the "possession, custody, or control" of the served party if the party has actual possession, custody, or control, or has "the legal right to obtain the documents on demand." U.S. v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1452 (9th Cir. 1989).  The party responding to a request for production of documents has an obligation to conduct a reasonable inquiry into the factual basis of its responses to the request to produce documents.  Fed.R.Civ.P. 34.

In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence.  Rogers v. Giubino, 288 F.R.D. 469, 485 (S.D. Cal. 2012).  A party is not required to create a document where none exists.  Id.

The undersigned finds that defendants provided plaintiff with all documents in their possession, custody or control that were responsive to request nos. 1 and 3.  The declarations of Lieutenant Ellin and Litigation Coordinator Young demonstrate that defendants made a reasonable inquiry and exercised due diligence in looking for the logs requested, which would be responsive to both request nos. 1 and 3.[2]

////

---

[2]  The undersigned observes that defendants directed Litigation Coordinator Young to search for the B facility logs in response to the motion to compel.  In other words, the original search was only for the A facility logs.

1    Plaintiff may be correct that the requested logs should have been available because
2 regulations required that they be maintained for one year.  However, the undersigned cannot order
3 defendants to produce documents that cannot be located after a reasonable and diligent search.
4 Defendants represent that they are continuing their efforts to locate the logs.
5    With regard to the suicide logs, plaintiff's reply clarifies that he is really seeking what
6 appears to be medical records.  Request nos. 1 and 3 clearly do not seek medical records.
7 Plaintiff may not amend his discovery request by way of his reply to defendants' opposition to the
8 motion to compel.
9    For the reasons discussed above, IT IS HEREBY ORDERED that plaintiff's motion to
10 compel (ECF No. 29) is denied.
11 Dated:  October 23, 2014
12
13 Can363.com

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE