1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEITH CANDLER,                          No.  2:14-cv-0363 GEB KJN P

12                Plaintiff,

13         v.                                ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   MALLOT, et al.,

15                Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court are cross motions for summary judgment.  (ECF

20   Nos. 42, 48.)  Plaintiff's motion is for partial summary judgment.  After carefully reviewing the

21   record, the undersigned recommends that plaintiff's motion be denied and defendants' motion be

22   granted in part and denied in part.

23   II.  Legal Standard for Summary Judgment

24        Summary judgment is appropriate when it is demonstrated that the standard set forth in

25   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

26   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

27   judgment as a matter of law."  Fed. R. Civ. P. 56(a).

28   ////

                                               1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

2

1  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

2  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

3  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

4  1564, 1575 (9th Cir. 1990).

5          In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

9  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

11  amendments).

12          In resolving a summary judgment motion, the court examines the pleadings, depositions,

13  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

14  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

15  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

16  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

17  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

18  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

19  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

20  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

21  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

22  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

23  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

24          By contemporaneous notice provided on July 30, 2014, (ECF No. 22-2), plaintiff was

25  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

26  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

27  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

28  ////

1   III.  Plaintiff's Claims

2          This action is proceeding on plaintiff's verified original complaint as to defendants Kitch,

3   Lee, Mallot, Pavich and Torres.

4          Plaintiff alleges that on July 26, 2013, he was housed in administrative segregation ("ad

5   seg"). (ECF No. 1 at 3.)  At around 10:30 p.m., plaintiff complained to the unit officer that he

6   was having suicidal thoughts.  (Id.)  Plaintiff was handcuffed and then placed in a holding cage.

7   (Id.)

8          When defendants Pavich and Lee arrived to take plaintiff to see medical staff, defendant

9   Pavich allegedly put a pair of handcuffs on plaintiff so tightly that they caused pain and cut off

10  the circulation in plaintiff's wrist.  (Id.)  Defendant Pavich also placed a pair of leg irons on

11  plaintiff's ankles so tightly that they caused pain and cut off circulation.  (Id. at 3-4.)  Plaintiff

12  asked defendants Pavich and Lee to loosen up the restraints because they were painful but they

13  refused.  (Id. at 3.)

14         Plaintiff was then made to walk 300 feet to a transportation vehicle.  (Id. at 4.)  Plaintiff's

15  leg restraints hurt with every step.  (Id.)

16         When plaintiff arrived at medical, the nurse also refused to loosen the restraints.  (Id.)

17  Defendants Pavich and Lee put plaintiff in a holding cage the size of a phone booth.  (Id.)

18  Plaintiff heard defendant Torres tell defendants Pavich and Lee, "you didn't see nothing, you

19  didn't hear nothing."  (Id.)  There were other inmates in nearby holding cages complaining of

20  cold weather, long waits and tight restraints.  (Id. at 4-5.)

21         Plaintiff asked defendants Mallott, Torres and Kitch to loosen his restraints, but they

22  allegedly refused to help plaintiff.  (Id. at 5.)  Approximately two hours passed and plaintiff

23  needed to use the restroom.   (Id.)  Plaintiff repeatedly asked defendant Mallott, Torres and Kitch

24  to use the restroom but they refused plaintiff's request.  (Id.)  Plaintiff's shoulders began to hurt

25  because he was handcuffed behind his back.  (Id.)

26         After approximately five hours, plaintiff was forced to walk back through the "CTC" with

27  the restraints cutting through his skin at the ankles and wrist.  (Id. at 6.)  Plaintiff was driven to C-

28  yard and escorted to a room for suicide watch.  (Id.)  When defendants Pavich and Lee removed

                                                      4

1    the restraints, there were cuts, scrapes and bruises on plaintiff's wrist and ankles.  (Id.)  Plaintiff

2    asked defendants for medical attention for these injuries, but defendants allegedly said that no

3    medical staff were on duty at the time.  (Id.)  Defendants then left the area.  (Id.)

4    IV.  Discussion

5           Plaintiff's complaint includes the following legal claims.  First, plaintiff alleges that

6    defendants used excessive force in violation of the Eighth Amendment with respect to the

7    application of handcuffs and leg irons.  Second, plaintiff alleges that defendants violated the

8    Eighth Amendment when they made him stand outside in the holding cage in cold weather.

9    Third, plaintiff alleges that defendants Mallott, Torres and Kitch violated the Eighth Amendment

10   when they refused to allow plaintiff to use the restroom.

11          A.  Excessive Force

12          *Undisputed Facts*

13          On the evening of July 26, 2013, plaintiff was in his cell in ad seg, Facility B at California

14   State Prison-Sacramento ("CSP-Sac") for disciplinary reasons.  (ECF No. 48-2 at 2.)  First watch

15   at CSP-Sac begins at 10:00 p.m. and ends at 6:00 a.m.  (Id.)

16          On July 26, 2013, at around 10:30 p.m., the floor officer observed plaintiff in his cell

17   standing on his desk with a noose around his neck in an apparent suicide attempt.  (Id.)

18   Defendants Lee and Pavich then escorted plaintiff in a vehicle to the Facility A medical clinic for

19   evaluation by medical and mental health staff.  (Id.)

20          Defendants placed plaintiff in handcuffs and leg restraints during the transport for three

21   reasons:  1) plaintiff expressed suicidal intentions or exhibited suicidal behavior; 2) plaintiff was

22   an ad seg inmate, and such inmates are placed in handcuffs and leg restraints because of the

23   increased risk to staff when escorting such inmates; and 3) all inmates who are removed from

24   their cell during first watch are placed in handcuffs and leg restraints because there is less custody

25   staff present on first watch.  (Id. at 3.)

26          Plaintiff was brought to Facility A because that is where medical staff who evaluate

27   inmates expressing suicidal thoughts or intentions are located during first watch.  (Id.)  Inmates

28   brought to Facility A for evaluation by medical personnel during first watch are placed in holding

1    cells to await evaluation by medical staff and to await orders from mental health clinicians, who

2    are not on site during first watch, but who are on call.  (Id.)

3          At approximately 11:47 p.m., plaintiff was placed in a holding cell in the Facility A

4    sallyport because these cells are in view of the Facility A Ad Seg Watch Office, and plaintiff

5    would be under observation by officers in that office.  (Id.)  Once plaintiff was placed in the

6    holding cell, defendants Pavich and Lee left Facility A.  (Id.)  The Facility A Sallyport holding

7    cell areas are in a covered, outside location.  (Id.)

8          Inmates who express suicidal thoughts or display suicidal behavior are kept in handcuffs

9    and leg restraints while in holding cells for their safety, and the safety and security of staff and

10   other inmates.  (Id. at 4.)  Inmates who express suicidal thoughts or display suicidal behavior

11   remain in handcuffs and leg restraints until such time as the inmate is placed in his new housing

12   on orders given by mental health staff.  (Id.)  The parties do not dispute that plaintiff's handcuffs

13   were fastened behind plaintiff's back.

14         A nurse evaluated plaintiff after he was brought to Facility A.  (Id. at 5.)  The nurse who

15   evaluated plaintiff then contacted the on-call mental health clinician.  (Id.)  Orders were received

16   from the on-call mental health clinician as to the appropriate housing unit for plaintiff, and those

17   orders were transmitted to the watch office.  (Id.)  Defendants Pavich and Lee returned to Facility

18   A and escorted plaintiff from Facility A to Cell C ZZ001, a cell in C Facility, for suicide

19   precaution as directed by the orders from the on-call mental health clinician.  (Id.)

20         Once plaintiff was put in C ZZ001 cell, his handcuffs and leg restraints were removed.

21   (Id.)

22         *Disputed Facts*

23         The parties dispute whether plaintiff complained that the handcuffs and leg restraints were

24   too tight.  As discussed above, in his verified complaint, plaintiff alleges that he asked defendants

25   Lee and Pavich to loosen the restraints immediately after they were put on, but defendants

26   refused.  (ECF 1 at 3.)  Plaintiff also alleges that he later asked defendants Mallott, Torres and

27   Kitch to loosen his restraints, but they refused.  (Id. at 5.)   At his deposition, plaintiff testified

28   that he talked to defendants Mallot, Torres and Kitch as they walked by.  (Plaintiff's deposition at

47.)  Plaintiff testified that the only defendant who responded to his request to loosen the

restraints was defendant Mallott who told him that the other officers would be back soon.  (Id. at

48.)  Plaintiff testified that defendants Mallot, Torres and Kitch walked back and forth in front of

plaintiff's holding cell "at least five times."  (Id. at 49.)

In their declarations submitted in support of their summary judgment motion, defendants

all state that they do not recall plaintiff complaining that his restraints were too tight.  (ECF No.

48-6 at 2 (Lee); ECF No. 48-13 at 2 (Pavich); ECF No. 48-7 at 3 (Mallot); ECF no. 48-10 at 2

(Torres); (ECF No. 48-12 at 2 (Kitch).)  All defendants state that if plaintiff had complained that

his restraints were too tight, they would have checked to determine if they were too tight, and

then loosened them if appropriate.  (ECF No. 48-6 at 2 (Lee); ECF No. 48-13 at 2 (Pavich); ECF

No. 48-7 at 3 (Mallott); ECF No. 48-10 at 2 (Torres); ECF No. 48-12 at 2-3 (Kitch).)

The parties also dispute the overall amount of time plaintiff wore the restraints.  Plaintiff

alleges that he wore the restraints for approximately 4 hours, i.e., from approximately 11:00 p.m.

until 3 a.m.  Under defendants' version of events, plaintiff wore the restraints for approximately 3

hours, i.e, from approximately 11:00 p.m. until 2:00 a.m.  The undersigned herein sets forth the

evidence regarding this issue.

The parties do not dispute that plaintiff complained of suicidal thoughts at approximately

10:30 p.m.  At his deposition, plaintiff testified that after he complained of suicidal thoughts, he

was placed in a holding cell and defendants Pavich and Lee arrived about twenty minutes later,

i.e., at approximately 10:50 p.m.  (Plaintiff's deposition at 31.)  Defendants do not appear to

dispute this time line.

The parties are fairly close in their claims regarding when defendants Lee and Pavich

brought plaintiff to the Facility A holding cell.  At his deposition, plaintiff testified that

defendants Pavich and Lee first took him to an interview room with a nurse before taking him to

Facility A.  (Id. at 44.)  Plaintiff testified that he left the interview room at around 11:00 p.m. and

was placed in the Facility A holding cage approximately 20-25 minutes later.  (Id.)  In their

declarations, defendants Pavich and Lee state that they placed plaintiff in the Facility A holding

cell at approximately 11:47 p.m.  (ECF No. 48-13 at 2 (Pavich); ECF No. 48-6 at 3 (Lee).)

1    Attached to defendants' declarations are holding cell logs reflecting the time they placed plaintiff

2    in the holding cell.

3          The parties dispute when plaintiff was removed from the Facility A holding cell and taken

4    to the suicide watch cell.  At his deposition, plaintiff alleges that he stayed in the Facility A

5    holding cell until at 3:00 a.m. (Plaintiff's deposition at 49.)  Plaintiff testified that he knew the

6    time because when he went to the next location with the "CNA," he asked her what time it was,

7    and she said 3:00 a.m.  (Id.)  Defendants claim that plaintiff was removed from the Facility A

8    holding cell at 2:00 a.m.  (See Pavich and Lee declarations:  ECF No. 48-13 at 2 (Pavich); ECF

9    No. 48-6 at 3 (Lee).)   Defendants have also provided the suicide watch tracking log which states

10   that plaintiff arrived at C ZZ cell for suicide watch at 2:15 a.m.  (ECF No. 48-11 at 4.)

11         The parties dispute the extent of injuries plaintiff suffered.  Defendants argue that plaintiff

12   suffered only minor injuries.  Defendants do not dispute that plaintiff suffered "minor" cuts and

13   scratches on his wrists and ankles that plaintiff claims were caused by the handcuffs and leg

14   restraints. (ECF No. 48-2 at 5.)  Defendants also do not dispute that plaintiff experienced

15   numbness in his thumb for about one week after July 26, 2013.  (Id.)  Defendants cite the records

16   from plaintiff's exams on July 30, 2013, and August 7, 2013, as evidence that plaintiff's injuries

17   were minor.  Defendants also submitted the declaration of Dr. Nangalama who states that the

18   injuries described in these records demonstrate superficial and minor abrasions.  (ECF No. 48-3 at

19   2.)  The undersigned describes these forms herein.

20         On July 28, 2013, plaintiff submitted a request for treatment, at which time he complained

21   of cuts, bruises, pain and swelling, as well as numbness in his right wrist.  (ECF No. 48-3 at 4.)

22   On July 30, 2013, plaintiff was seen by a nurse in response to this request.  (Id. at 5.)  The form

23   states that no swelling or bruises were noted.  (Id.)  The color of plaintiff's wrists and ankles were

24   within normal range.  (Id.)  The form notes no other injuries to plaintiff's wrists or ankles.  (Id.)

25         On August 3, 2013, plaintiff submitted another health care services request form for

26   treatment for his ankles and wrists.  (Id. at 6.)  In this form, plaintiff wrote that he received "the

27   Motrin which helps with the pain."  (Id.)  Plaintiff wrote that after nine days, he still had scars

28   that were healing and every time handcuffs were put on, the scabs came off which slowed the

1   healing process.  (Id.)  Plaintiff requested a pack of ointment so that the cuts could heal better.

2   (Id.)

3      A nursing encounter form dated August 7, 2013, reported that plaintiff had very small

4   scars and no open areas.  (Id. at 7.)  Defendants also submitted the declaration of Dr. Nangalama

5   who states that the injuries described in these records demonstrate superficial and minor

6   abrasions.  (ECF No. 48-3 at 2.)

7      Plaintiff's deposition testimony describes injuries more serious than those reflected in the

8   July 30, 2013 and August 7, 2013 forms prepared by medical staff.  At his deposition plaintiff

9   testified that he had scabs on his ankles and wrists.  (Plaintiff's deposition transcript at 64-66.)

10     Plaintiff's deposition testimony describes the cuts in more detail:

11    Q:  How many cuts or scratches did you have on your right wrist?

12    A:  How many?

13    Q:  Yeah.

14    A:  It was like, you can't even tell how many it was because it is like the size of the

15  handcuffs.  You know what I mean?  You can't even see how many.  Like, just like scratches,

16  scratches and cuts.   But you can't count.  It's like different lines.  It is like one big cut.

17    Q:  Was there one distinct cut or several small cuts on the wrist?

18    A:  Well, I just know like once it scabbed up –

19    Q:  Uh-huh.

20    A:  -- you wouldn't –couldn't really tell.  It looks like it was one big cut once it scabbed

21  up.

22    Q:  Are you pointing to the top of your right hand?

23    A:  Right.

24    Q:  Is that where the cut was, on the top?

25    A:  Yeah, cut right there, too.

26    Q:  To the wrists?

27    A:  Here on the side, like that.

28    Q:  So the top of the wrist, side of the wrist?

1      A:  Yep, right there.

2      Q:  Left and right?  Or just right?

3      A:  Both of them.

4      Q:  Both of them.  So top of the wrist and on the side.  What about the bottom, the under

5  part of the wrists, any cuts there?

6      A:  No, I was not really – too much was not there that I recall.

7      Q:  Not like a big cut going all the way around?

8      A:  Yeah.  Just on the top, right here.

9      Q:  All right.  Would you describe the cuts as being deep?

10      A:  Yeah, they was bleeding.  Deep enough to where you seen blood.

11      Q:  How much were they bleeding, would you say?

12      A:  Oh, just red, like you can see meat.

13      Q:  But were there drops of blood falling on the floor?

14      A:  No, not drops of blood.  Not like that, no.

15      Q:  All right.

16      A:  I couldn't see it until –you couldn't see it until the handcuffs actually came off.

17      Q:  Okay.  When the cuffs were on your wrists and ankles, how did it feel?

18      A:  Painful.

19  (Plaintiff's deposition at 66-67.)

20      In his verified declaration filed in support of his opposition to defendants' summary

21  judgment motion, plaintiff alleges that he was ultimately given Motrin for pain and antibiotic

22  ointment for his injuries.  (ECF No. 42 at 5.)

23      *Analysis*

24      "When prison officials use excessive force against prisoners, they violate the inmates'

25  Eighth Amendment right to be free from cruel and unusual punishment."  Clement v. Gomez, 298

26  F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of excessive force in

27  violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force

28  maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore

10

1   discipline.  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).  In making this determination, the

2   court may evaluate (1) the need for application of force, (2) the relationship between that need

3   and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and

4   (4) any efforts made to temper the severity of a forceful response.  Id. at 7; see also id. at 9–10.

5       The Eighth Amendment excessive force standard examines de minimis uses of force, not

6   de minimis injuries.  See Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).  However, not

7   "every malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson v.

8   McMillian, 503 U.S. 1, 9 (1992).  "The Eighth Amendment's prohibition of cruel and unusual

9   punishments necessarily excludes from constitutional recognition de minimis uses of physical

10  force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"

11  Id. at 9–10 (internal quotations marks and citations omitted).

12      "[O]verly tight handcuffing can constitute excessive force."  Wall v. Cnty of Orange, 364

13  F.3 1107, 1112 (9th Cir. 2004) (Fourth Amendment claim).  "The Ninth Circuit has held that

14  excessively tight handcuffing can constitute [excessive force], but only where a plaintiff claims to

15  have been demonstrably injured by the handcuffs or where complaints about the handcuffs being

16  too tight were ignored."  Cf. Dillman v. Tuolumne County, 2013 WL 1907379 at *8 (E.D. Cal.

17  2013) (citing Wall v. County of Orange, 364 F.3d 1107, 1109–12 (9th Cir. 2004) (arrestee

18  suffered nerve damage as a result of continued restraint in tight handcuffs); LaLonde v. County of

19  Riverside, 204 F.3d 947, 952, 960 (9th Cir. 2000) (arrestee complained to officer who refused to

20  loosen handcuffs); Palmer v. Sanderson, 9 F.3d 1433, 1434–36 (9th Cir. 1993) (arrestee's wrists

21  were discolored and officer ignored his complaint), with Hupp v. City of Walnut Creek, 389

22  F.Supp.2d 1229, 1233 (N.D. Cal. 2005) (denying summary judgment in the absence of "evidence

23  of a physical manifestation of injury or of a complaint about tight handcuffs that was ignored");

24  Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002) (refusing to find a constitutional violation

25  where officers immediately acted after arrestee complained that handcuffs were too tight).)[1]

26  ─────────────────
    [1]   In Smith v. Yaroborough, 2008 WL 4877464 at *12 n. 3 (C.D. 2008), the Central District also
27  considered the type of injury required in a case alleging excessive force based on overly tight
    handcuffs.  After surveying the case law, the Central District found that, "[i]n general, in cases
28  where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain,

1    In the instant case, as indicated by the discussion above, whether plaintiff asked all

2    defendants to loosen the handcuffs and leg restraints is a materially disputed fact.  Defendants

3    claim that plaintiff did not tell them that the handcuffs and leg restraints were too tight.  In

4    contrast, plaintiff alleges that he told all defendants that the handcuffs and leg restraints were too

5    tight.  On this ground, both motions for summary judgment as to this claim should be denied.

6    Defendants also move for summary judgment on grounds that plaintiff alleges no more

7    than a de minimis injury.  As indicated above, Ninth Circuit case law indicates that a plaintiff is

8    not required to have a demonstrable injury in order to demonstrate excessive force in the

9    application of handcuffs if he complained that the handcuffs were too tight.  Moreover, in a recent

10   unpublished case addressing a Fourth Amendment claim for excessive handcuffing, the Ninth

11   Circuit found that the plaintiff was not required to show that the handcuffs caused visible physical

12   injury.  See Thompson v Lake, 2015 WL 1501760 at* 1 (9th Cir. April 3, 2015) ("[I]t is enough

13   that the handcuffs caused [plaintiff] unnecessary pain.")

14   In the instant case, while the extent of plaintiff's injuries is disputed, plaintiff's undisputed

15   injuries are sufficient to state an Eighth Amendment claim.  Defendants do not dispute that the

16   handcuffs and leg restraints caused plaintiff to suffer pain.  In addition, it is undisputed that the

17   handcuffs caused plaintiff to have scars on his wrists.  Defendants also do not dispute that

18   plaintiff suffered numbness in his right thumb for one week after the incident.

19   The undersigned observes that some of plaintiff's claimed physical injuries are not

20   consistent with the medical records.  At his deposition, plaintiff testified that he suffered cuts on

21   both of his wrists that looked like one big cut the size of the handcuffs.  The undersigned

22   particularly notes plaintiff's testimony that the handcuffs bore into his wrists to the extent that he

23   could see "meat."  In contrast, the record from the July 30, 2013 exam stated that no swelling or

24

25   repeatedly asked the defendants to remove or loosen the handcuffs, had pre-existing injuries
     known to the defendant, or alleged other forms of abusive conduct by defendant."  Id., citing

26   Shaw v. City of Rendondo Beach, 2005 WL 6117549 at *7 (C.D. Cal. 2005) ("In those tight
     handcuffing cases in which courts have found excessive force, the arrestee was either in visible

27   pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe
     injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or

28   released, and/or other forms of abusive conduct in conjunction with the tight handcuffing.")

1    bruises were noted.  The notes from this examination also stated that the color of plaintiff's wrists

2    and ankles were within normal range.  The notes from the July 30, 2013 exam noted no other

3    injuries to plaintiff's wrists or ankles.  The notes from the August 7, 2013 examination stated that

4    plaintiff had very small scars and no open areas.

5         The undersigned is puzzled that the notes from the July 30, 2013 exam do not mention any

6    injury to plaintiff's wrists which would have caused the scars referred to in the notes from the

7    August 7, 2013 exam.  The undersigned also notes that in his August 3, 2013 request for medical

8    services, plaintiff wrote that he had been given Motrin for the pain associated with his injuries.

9    This note suggests that other medical records may exist regarding the medical care plaintiff

10   received for his injuries which are not before the court.  However, the court need not consider

11   these issues here because plaintiff has alleged sufficient injuries in support of his Eighth

12   Amendment claim.

13        In his summary judgment motion, plaintiff also argues that defendants were not authorized

14   to use leg irons.  Attached as an exhibit to plaintiff's summary judgment motion is a copy of the

15   California Department of Corrections ("DOM") Manual regarding the use of restraint gear.  (ECF

16   No. 42-2 at 8.)  Section 52050.10.3 states that leg restraints shall be utilized on inmates who have

17   been placed on "leg iron status" by the administrative segregation captain.  (Id.)

18        In their opposition, defendants object that plaintiff's exhibit containing DOM section

19   52050.10.3 is not authenticated and incomplete.  (ECF No. 47-1 at 5.)  Defendants also object that

20   plaintiff has provided no evidence that the material in this exhibit applies under the circumstances

21   or facts of this case.  (Id.)  Defendants' objections to plaintiff's exhibit containing Section

22   52050.10.3 of the DOM manual have merit.  See Federal Rules of Evidence 901, 401, 402.

23   Accordingly, the undersigned finds that plaintiff has not demonstrated that defendants were not

24   authorized to use leg irons.

25        Plaintiff also suggests that a suicidal inmate should not be required to wait for mental

26   health care for several hours in a holding cage, with his hands handcuffed tightly behind his back

27   and in leg restraints.  As noted above, in Smith v. Yarborough, 2008 WL 4877464 (C.D. 2008),

28   and Shaw v. City of Rendondo Beach, 2005 WL 6117549 (C.D. Cal. 2005), the Central District

13

1    found that tight handcuffing was found to constitute excessive force in a variety of situations,

2    including when combined with "other forms of abusive conduct by defendant." Smith, 2008 WL

3    4877464 at *12 n.3; Shaw, 2005 WL 6117549 at *7. The conditions under which plaintiff wore

4    the restraints may constitute the "other abusive conduct" referred to by the Central District.

5    However, the undersigned does not reach this issue because neither party has sufficiently briefed

6    this issue in the pending motions.

7         In conclusion, both motions for summary judgment as to plaintiff's excessive force claim

8    should be denied because whether plaintiff told defendants that the restraints were too tight is a

9    materially disputed fact. Defendants' motion for summary judgment as to this claim on grounds

10   that plaintiff did not allege sufficient injury should also be denied.

11        *Qualified Immunity*

12        Defendants also argue that they are entitled to qualified immunity as to plaintiff's

13   excessive force claim.

14        In analyzing a claim of qualified immunity, a court must examine (1) whether the facts as

15   alleged, taken in the light most favorable to plaintiff, show that the defendant's conduct violated a

16   constitutional right, and (2) if a constitutional right was violated, whether, "in light of the specific

17   context of the case," the constitutional right was so clearly established that a reasonable official

18   would understand that what he or she was doing violated that right. See Saucier v. Katz, 533 U.S.

19   194, 201–02 (2001). If no constitutional right was violated, the inquiry ends and the defendant

20   prevails. Saucier, 533 U.S. at 201.

21        To meet the "clearly established" requirement, "[t]he contours of the right must be

22   sufficiently clear that a reasonable official would understand that what he is doing violates that

23   right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This requires defining the right

24   allegedly violated in a "particularized" sense that is "relevant" to the actual facts alleged. Id.

25   "Because the focus is on whether the officer had fair notice that her conduct was unlawful,

26   reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v.

27   Haugen, 543 U.S. 194, 198 (2004).

28   ////

14

1    Courts are not required to address the two inquiries in any particular order.  Rather, courts

2    may "exercise their sound discretion in deciding which of the two prongs of the qualified

3    immunity analysis should be addressed first in light of the circumstances in the particular case at

4    hand."  Pearson v. Callahan, 555 U.S. 223, 243 (2009).

5    Taking the facts in the light most favorable to plaintiff, the undersigned finds that

6    defendants may have violated his constitutional rights.  Plaintiff alleges that defendants

7    disregarded his request to loosen the restraints and that he suffered injuries because the restraints

8    were applied too tightly.  The undersigned finds that under these circumstances, no reasonable

9    officer could believe that the application of handcuffs was lawful.  See Palmer v. Anderson, 9

10   F.3d 1433, 1436 (9th Cir. 1993) (affirming the denial of qualified immunity on an excessive force

11   claim where defendant unnecessarily fastened handcuffs so tightly around plaintiff's wrists that

12   they caused him pain and left bruises and refused to loosen the handcuffs after plaintiff's

13   complaint of pain).  Accordingly, defendants' motion for summary judgment on grounds that they

14   are entitled to qualified immunity should be denied.

15   *Plaintiff's Request Pursuant to Federal Rule of Civil Procedure 56(d)*

16   Finally, in his opposition plaintiff argues that defendants' summary judgment motion

17   should be denied because he was unable to locate the inmate witnesses who were with him in the

18   Facility A holding cell area.  (ECF No. 52 at 3-4.)  Plaintiff argues that these inmate witnesses

19   could provide declarations in support of his claim that he asked defendants to loosen the

20   restraints.  (Id.)

21   Federal Rule of Civil Procedure 56(d) provides that if a nonmovant shows, for specified

22   reasons, that it cannot presents facts essential to justify its opposition, the court may defer

23   considering the motion or deny it.

24   For the following reason, the undersigned finds that plaintiff's inability to locate his

25   inmate witnesses does not warrant denying defendants' summary judgment motion.  First,

26   plaintiff's inability to locate his inmate witnesses did not prevent plaintiff from moving for

27   summary judgment as to this claim.  Second, and more importantly, plaintiff's summary

28   judgment motion does not require the declarations from these inmate witnesses.  Plaintiff's

15

1    statements in his verified pleadings and deposition testimony are sufficient to demonstrate the

2    existence of disputed material facts as to this claim.  Accordingly, plaintiff's request that

3    defendants' summary judgment motion be denied pursuant to Federal Rule of Civil Procedure

4    56(d) should be denied.

5         B.   Denial of Access to Restroom

6         *Legal Standard*

7         Temporary deprivation of access to a toilet can rise to the level of an Eighth Amendment

8    violation.  Hope v. Pelzer 536 U.S. 730, 738 (2002) (preventing inmate from using toilet for 7

9    hours while handcuffed to hitching post contributed to Eighth Amendment violation); Pollard v.

10   GEO Grp., Inc., 607 F.3d 583, 598 (9th Cir. 2010) ("a prison inmate deprived of access to a toilet

11   for several days would have a strong case against prison officers under Bivens "), rev'd on other

12   grounds by Minneci v. Pollard, 132 S. Ct. 617 (2012); Johnson v. Lewis, 217 F.3d 726,730, 733

13   (9th Cir. 2000) (complete absence of toilet facilities for inmates for one day could violate the

14   Eighth Amendment).  Nonetheless, "toilets can be unavailable for some period of time without

15   violating the Eighth Amendment."  Johnson, 217 F.3d at 733; accord Gunn v. Tilton, 2011 WL

16   1121949, at *3 (E.D. Cal. Mar. 23, 2011) (depriving inmate of access to a restroom for three to

17   four hours did not violate the Eighth Amendment).

18        *Discussion*

19        The parties dispute whether plaintiff asked to use the bathroom while he was in the

20   holding cell in Facility A.  Defendants Mallot, Torres and Kitch have no recollection of plaintiff

21   asking to use the bathroom.  (ECF No. 48-2.)   In his complaint, plaintiff alleges that after two

22   hours passed, he needed to use the restroom. (ECF No. 1 at 5.)  Plaintiff alleges that he repeatedly

23   asked defendant Mallott, Torres and Kitch to use the restroom but they refused plaintiff's request.

24   (Id.)  In his verified opposition, plaintiff alleges that he had to wait approximately two hours to

25   use the restroom.  (ECF No. 52 at 6.)  Plaintiff offers no evidence that he suffered any injury as a

26   result of having to wait two hours to use the restroom.

27        The parties do not dispute that plaintiff was able to use the bathroom within two minutes

28   of his arrival in the Facility C ZZ cell.

1    Taking the facts in the light most favorable to plaintiff, the undersigned finds no violation

2    of his Eighth Amendment rights.  Plaintiff's inability to use the bathroom was temporary and the

3    duration was not such that it posed a threat of serious physical harm or illness to plaintiff.  See

4    Gunn, supra; Kanvick v. Nevada, 2010 WL 2162324 at *5-6 (D. Nev. 2010) (noting that

5    temporary deprivation of access to restrooms does not give rise to an Eighth Amendment claim in

6    the absence of physical injury or risk of contamination.)  Accordingly, defendants should be

7    granted summary judgment as to this claim.

8    C. Exposure to Elements

9    Plaintiff alleges that defendants violated his Eighth Amendment rights by making him

10    stand in the Facility A holding cell, which is outside, during cold weather.  In his verified

11    opposition, plaintiff alleges that he was wearing only boxer shorts and a t-shirt while in the

12    holding cell.  (ECF No. 52 at 7.)  Plaintiff alleges that he is asthmatic and has allergies.  (Id.)

13    Plaintiff alleges that he is sensitive to cold and has been sickened before due to exposure to cold

14    weather.  (Id.)

15    Defendants move for summary judgment as to this claim on grounds that the outside

16    temperature was not cold.  In support of this argument, defendants cite the declaration of

17    Correctional Captain J. Stewart.  (ECF No. 48-5 at 1.)  Captain Stewart states that the outside

18    temperature logs maintained by California State Prison-Sacramento ("CSP-Sac") state that on

19    July 26, 2013, at 11:00 p.m., the outside temperature was 81.5 degrees.  (Id. at 2.)  On July 27,

20    2013, at 2:00 a.m., the outside temperature was 75.4 degrees.  (Id.)  Plaintiff has offered no

21    evidence disputing defendants' evidence regarding the outside temperature.

22    As discussed above, the parties dispute the amount of time plaintiff was in the Facility A

23    holding cell.  However, assuming plaintiff was in the holding cell for the time he alleges (a little

24    over 3 hours), the undersigned finds that plaintiff's exposure to the elements did not violate the

25    Eighth Amendment.  See Gunn v. Tilton, 2011 WL 1121949 at *4 (E.D. Cal. 2011) (detaining

26    prisoner outside for approximately six hours in temperatures ranging from 52 to 79 degrees did

27    not violate Eighth Amendment); Reyes v. Kirkland, 2010 WL 3398486 at *5-6 (N.D. Cal. Aug.

28    27, 2010) (finding that detaining a prisoner outside in cool temperatures for sixteen hours did not

1    result in a deprivation sufficiently serious to warrant relief under the Eighth Amendment).

2    Accordingly, defendants should be granted summary judgment as to this claim.

3              D.   Plaintiff's Claims for Mental or Emotional Injuries

4         Defendants argue that plaintiff's claims for mental or emotional injuries should be

5    dismissed pursuant to 42 U.S.C. § 1997e(e) because the injuries he suffered were de minimis.

6    This section provides, "No federal civil action may be brought by a prisoner confined in a jail,

7    prison, or other correctional facility, for mental or emotional injury suffered while in custody

8    without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This section "requires a prior

9    showing of physical injury that need not be significant but more than de minimis."  Oliver v.

10   Keller, 289 F.3d 623, 627-29 (9th Cir. 2002).  The physical injury requirement applies only to

11   claims for mental or emotional injuries and does not bar claims for compensatory, nominal or

12   punitive damages.  Id. at 630.

13        The undersigned considers this argument with respect to plaintiff's excessive force claim

14   only.  As discussed above, plaintiff alleges that his injuries were more than de minimis.  In

15   contrast, the medical records submitted by the parties indicate that plaintiff's injuries were not

16   serious.  However, as discussed above, the undersigned is puzzled that the medical record from

17   the July 30, 2013 exam does not reflect any injury that would have caused the scarring noted in

18   the notes from the August 7, 2013 exam.  While Dr. Nangalama states that plaintiff's injuries

19   reflected in the notes from the August 7, 2013 exam were not serious, the undersigned is

20   concerned that the notes from the July 30, 2013 do not accurately reflect the extent of plaintiff's

21   injuries at a time closer to the incident.  The undersigned is also concerned that the court record

22   does not contain all of the records reflecting the medical care plaintiff received following the

23   incident, as indicated by plaintiff's statement in his August 3, 2013 request for medical care that

24   he received Motrin for his injuries.  For these reasons, the undersigned cannot find that

25   defendants have demonstrated that plaintiff's injuries were de minimis.

26        Accordingly, defendants' motion for summary judgment as to plaintiff's claim for mental

27   and emotional injuries should be denied.

28   ////

18

E. Punitive Damages

Defendants move for summary judgment as to plaintiff's claim for punitive damages. Punitive damages are available in a claim brought pursuant to 42 U.S.C. § 1983 where the "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Defendants argue that the evidence does not support a claim for punitive damages.

Whether plaintiff asked defendants to loosen his handcuffs and leg restraints is a materially disputed fact. If plaintiff is able to demonstrate that defendants ignored his request to loosen the handcuffs and leg restraints, he may be able to show that defendants acted with reckless or callous indifference to his Eighth Amendment rights. Accordingly, defendants' motion for summary judgment as to plaintiff's claim for punitive damages should be denied.

F. Official Capacity

Defendants move for summary judgment as to plaintiff's claims brought against them in their official capacities.

Plaintiff may not bring suit for monetary damages against defendants in their official capacities. "The Eleventh Amendment bars suit for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). Accordingly, defendants should be granted summary judgment as to plaintiff's official capacity claim for damages. This action should proceed only on plaintiff's individual capacity claim for damages.

Defendants also appear to argue that any claim for injunctive relief against them in their official capacities should be dismissed as well pursuant to the Eleventh Amendment. Defendants state that while plaintiff seeks injunctive relief in the form of better mental health care, plaintiff has admitted that defendants have no ability to control his mental health care or treatment.

"[T]he exception to Eleventh Amendment immunity applicable to prospective injunctive relief ... applies only to state officials with the ability to provide injunctive relief in their official capacities." Roberts v. Cal. Dept. of Corr., 2007 WL 951289 at *2 (N.D. Cal. 2007). Defendants cite plaintiff's deposition testimony where plaintiff concedes that defendants have no control over

1   the mental health care he receives.  (Plaintiff's deposition at 92-94.)

2          Because defendants cannot provide plaintiff with the requested injunctive relief,

3   defendants should be granted summary judgment as to plaintiff's claim for injunctive relief.

4   V.  Other Matters

5          On January 29, 2015, plaintiff filed a "reply" to defendants' summary judgment motion

6   (ECF No. 53), in support of his opposition filed the same date (ECF No. 52).  Attached to

7   plaintiff's reply are several exhibits.  On January 29, 2015, defendants filed objections to these

8   exhibits and a motion to strike these exhibits.  (ECF No. 54.)  Because the undersigned has not

9   considered any of the exhibits attached to plaintiff's reply in considering the pending summary

10  judgment motions, defendants' objections and motion to strike are denied as unnecessary.

11         On February 13, 2015, plaintiff filed three additional pleadings in support of his

12  opposition filed January 29, 2013: a declaration, a notice of supplemental opposition, and a

13  supplemental opposition.  (ECF Nos. 57, 58, 60.)  On March 2, 2015, defendants filed a motion to

14  strike these pleadings. (ECF No. 61.)  Defendants argue that these pleadings, filed after their

15  motion for summary judgment was fully briefed, are not authorized by the Local Rules or the

16  Federal Rule of Civil Procedure.  Defendants are correct.  See Local Rule 230(l).  Good cause

17  appearing, defendants' motion to strike is granted.

18         Accordingly, IT IS HEREBY ORDERED that:

19         1.  Defendants' evidentiary objections and motion to strike (ECF No. 54) are denied as

20  unnecessary;

21         2.  Defendants' motion to strike (ECF No. 61) is granted; and

22         IT IS HEREBY RECOMMENDED that:

23         1.  Plaintiff's motion for summary judgment (ECF No. 42) be denied;

24         2.  Defendants' summary judgment motion (ECF No. 48) be denied as to plaintiff's

25  excessive force claim against defendants in their individual capacities for damages, and denied as

26  to plaintiff's request for punitive damages and for mental and emotional injuries; defendants'

27  summary judgment be granted in all other respects.

28  ////

1         These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6    objections shall be filed and served within fourteen days after service of the objections.  The

7    parties are advised that failure to file objections within the specified time may waive the right to

8    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9    Dated:  May 12, 2015

10

11   _____
     KENDALL J. NEWMAN
12   UNITED STATES MAGISTRATE JUDGE

13

14   Can363.sj

15

16

17

18

19

20

21

22

23

24

25

26

27

28